NO. 07-10-00420-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

SEPTEMBER 13, 2011

_____

MITCHEL WAYNE STEWART, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY;

NO. 1201559R; HONORABLE ELIZABETH BERRY, JUDGE

_____

Before HANCOCK. and PIRTLE, JJ. and BOYD, S.J.[1]


**OPINION**

Appellant, Mitchel Wayne Stewart, appeals his conviction for burglary of a habitation[2] with an affirmative finding by the jury of the use of a deadly weapon during the commission of the burglary.[3] The jury assessed appellant's punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice (ID-

---

[1] John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

[2] See TEX. PENAL CODE ANN. § 30.02(a)(1) (West 2011).

[3] See TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(2) (West Supp. 2010).

TDCJ) for 60 years. Appellant appeals the judgment of the trial court contending that the trial court committed reversible error by submitting the deadly weapon issue to the jury when there was insufficient evidence to support the submission and by not *sua sponte* declaring a mistrial when certain allegedly inflammatory evidence was admitted. We affirm.

## Factual and Procedural Background

On October 26, 2009, JG,[4] a 78 year old woman, was alone in the home of her son in east Fort Worth. JG testified that she had gone to bed at approximately 10:00 p.m., and that her son left for work at about 11:00 p.m. JG was awakened by the ringing of the front door bell. JG testified that she was not going to answer the door at that time of night. The next noise JG heard was someone breaking in the front door. She grabbed a baseball bat that she kept in the bedroom, and approached the living room of the house. Appellant was already inside the house. During a confrontation between JG and appellant, appellant took the bat from JG and ordered her to sit in the living room. Appellant informed JG that he wanted to have sex with her. When JG refused, appellant began choking her. JG testified that she could not breathe while she was being choked, and thought appellant was going to kill her. Appellant released his choke hold on her and raised her shirt and began fondling her breasts. Appellant slapped her in the face with an open hand, and pulled his penis out from his pants and began masturbating. After masturbating, appellant asked for money. JG replied she

---

[4] The State filed an affidavit to allow the use of a pseudonym in lieu of JG's name.

2

did not have any money in the house. Subsequently, appellant asked JG to prepare him something to eat. JG convinced appellant to go outside on the porch and wait while she got him something to eat. JG gave appellant some bread and a can of Vienna sausage. Appellant then left the residence.

After appellant left, JG realized that he had taken her cell phone. Having no land line in the house, JG retrieved a gun that belonged to her son and went to a neighbor's house in an attempt to use the phone to call the police. One of her neighbors saw someone, that turned out to be JG, walking around with a gun and called the police. When the police arrived, not knowing of the burglary, they disarmed JG. After disarming JG, the police learned of the incident and called for more officers and, in particular, for female detectives from the sex crimes unit. During the investigation of the burglary, pictures of the injuries to JG were taken. These pictures were later admitted into evidence during the trial. The pictures reflected the bruises on JG's arm and her neck.

Appellant was subsequently indicted in a multi-count indictment that contained several paragraphs of different manner and means of committing burglary. The indictment against appellant also contained habitual offender allegations, which were amended by a notice of intent to prove prior convictions filed with the clerk after the indictment. The State also filed a notice of intent to seek a deadly weapon finding from the jury, specifically, that appellant's hands, in the manner of their use or intended use, were deadly weapons used during the commission of the offense.

On the day of trial, appellant entered a plea of guilty to burglary of a habitation with intent to commit theft, a plea of true to the prior convictions, and a plea of not true to the deadly weapon allegation. A jury was impaneled to consider the punishment to be assessed. At the conclusion of the testimony, appellant's trial counsel moved for an instructed verdict on the issue of the deadly weapon, which the trial court overruled. The Court's Charge, as submitted to the jury contained an issue inquiring whether appellant used a deadly weapon, to-wit: his hands, during the commission of the offense of burglary. Appellant's trial counsel objected to the special issue contending there was no evidence to support submitting the issue to the jury. The jury answered in the affirmative, and sentenced appellant to confinement in the ID-TDCJ for a period of 60 years. This appeal followed.

In his appeal, appellant brings forth two issues. First, appellant contends that the trial court erred in giving the special issue inquiring about the deadly weapon over trial counsel's objection. Second, appellant contends the trial court erred in failing to declare a mistrial when one of the detectives gave inflammatory testimony. We disagree with appellant and will affirm the judgment of the trial court.

Because of the chronology of the events complained of in appellant's appeal, we will first address the issue of the trial court's failure to *sua sponte* declare a mistrial.

### Mistrial Issue

Before reviewing the duty of a trial court to *sua sponte* declare a mistrial, we must address the issue of preservation of error. Preservation of error is a systemic requirement that we must review. See Haley v. State, 173 S.W.3d 510, 515

(Tex.Crim.App. 2005). The issue before this Court concerns the testimony of Detective Cleveland of the Fort Worth Police Department. Cleveland was the lead detective on appellant's burglary case. During her investigation, Cleveland had the opportunity to question appellant on two occasions. It was her testimony regarding the second interview that is the basis of appellant's second issue regarding a mistrial.

During direct examination, Cleveland testified that appellant began staring at her breasts and that subsequently, during that same interview, she became aware that appellant appeared to be masturbating under his coat that was across his lap. When asked how she felt at the conclusion of the interview, Cleveland stated, "I wanted to kill him." During cross-examination, appellant's trial counsel questioned Cleveland about the masturbation episode, and questioned why she did not try to collect any DNA evidence from appellant's coat. After cross-examining Cleveland about her failure to collect DNA, trial counsel stated, "You just wanted to kill him." To which Cleveland responded by saying, "Not literally, sir, but I was very upset at the end of that interview." Finally, appellant contends that, when Cleveland described going home and standing in the shower "for 30 minutes because [she] felt disgusting when she left there," she was giving additional inflammatory testimony that warranted a mistrial.

The problem with all of appellant's contentions regarding this testimony is that there was never any objection lodged at trial to any of the testimony. In fact, a good portion of the complained of testimony was elicited by appellant's trial counsel during cross-examination. It is axiomatic that, in order to preserve a point for appeal, an

objection, motion, or some other mechanism must be used to draw the trial court's attention to the alleged error. See TEX. R. APP. P. 33.1(a)(1). Appellant failed to do this.

Appellant contends that we should treat this issue as some sort of "fundamental error" that does not require an objection to preserve the issue for appeal. The matter of preservation has been thoroughly discussed by the Texas Court of Criminal Appeals, and Mendez v. State, 138 S.W.3d 334, 342 (Tex.Crim.App. 2004), controls our disposition of this matter. Mendez concerned the issue of whether a trial court had a duty to change a defendant's plea of guilty to not guilty on its own motion. Id. at 336. During a plea of guilty before a jury, the defendant testified that he did not mean to shoot and kill the victim. Id. at 336-37. In his appeal, he claimed that the trial court, upon hearing his testimony, should have *sua sponte* withdrawn his plea of guilty. Id. The court held that, "[e]xcept for complaints involving systemic (or absolute) requirements, or rights that are waivable only, which are not involved here, all other complaints, whether constitutional, statutory, or otherwise, are forfeited by failure to comply with Rule 33.1(a)." Id. at 342. We have found no cases that would construe the type of testimony complained of as violative of systemic requirements, or rights that are waivable only. Id. Neither has appellant cited to any case so holding, therefore, appellant must have objected or the issue has been forfeited. Id. Accordingly, we hold that there is nothing preserved for appeal and appellant's issue is overruled.

## Special Issue

Appellant next complains that the trial court erred in submitting the special issue that inquired about the use of a deadly weapon during the commission of the burglary.

Appellant's complaint, when placed in proper perspective, attacks the sufficiency of the evidence to support the jury's answer to the special issue. See Yandell v. State, 46 S.W.3d 357, 363 n.2 (Tex.App.—Austin 2001, pet. ref'd). Our interpretation of appellant's issue is confirmed when the authority cited in appellant's brief is reviewed.

Standard of Review

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ross v. State, 133 S.W.3d 618, 620 (Tex.Crim.App. 2004). "[O]nly that evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction." Brooks v. State, 323 S.W.3d 893, 917 (Tex.Crim.App. 2010) (Cochran, J., concurring). We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by Jackson." Id. When reviewing all of the evidence under the Jackson standard of review, the ultimate question is whether the jury's finding was a rational finding. See id. at 906, 907 n.26 (discussing Judge Cochran's dissent in Watson v. State, 204 S.W.3d 404, 448–50 (Tex.Crim.App. 2006), as outlining the proper application of a single evidentiary standard of review).[5] "[T]he reviewing court is

---

[5] We note that this Court has at times quoted Moreno v. State, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988), for the proposition that we had to uphold the verdict of the jury unless it was irrational or unsupported by more than a mere modicum of evidence.

required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." Id. at 899.

Deadly Weapon

The jury issue inquired:

> Do you find beyond a reasonable doubt that the [appellant], Mitchel Wayne Stewart, used or exhibited a deadly weapon, to-wit: [appellant's] hand, that in the manner of its use or intended use was capable of causing death or serious bodily injury, during the commission of the offense of Burglary of a Habitation with intent to Commit Theft, as alleged in the indictment.

A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." See TEX. PENAL CODE Ann. § 1.07(a)(17)(B) (West 2011).[6] The relevant inquiry is whether the instrumentality is capable of causing death or serious bodily injury. See McCain v. State, 22 S.W.3d 497, 503 (Tex.Crim.App. 2000). The statute speaks in terms of capability to cause death or serious bodily injury, meaning that no actual death or serious bodily injury need have occurred. Id. In McCain, the Texas Court of Criminal Appeals analyzed the interpretation of the phrase "capable of causing death or serious bodily injury" found in section 1.07(a)(17)(B). Id. The Court ultimately stated, "[t]he placement of the word

---

We view such a statement, insofar as a modicum of evidence being sufficient evidence, as contrary to a rigorous application of the Jackson standard of review urged by the Court in Brooks.

[6] Further reference to the Texas Penal Code will be by reference to "section ___."

8

'capable' in the provision enables the statute to cover conduct that threatens deadly force, even if the actor has no intention of actually using deadly force." Id.

Analysis

The evidence before the jury consisted of the testimony of Cleveland, JG, and the photographs taken of JG's injuries. Turning first to Cleveland's testimony, the record reveals that, during direct examination, she testified that she observed the marks around JG's neck on the night of the burglary. Cleveland saw scratches on JG's neck that were consistent with the choking described by JG. Further, when shown the photographs of JG's neck, she identified the bruising as being the same marks she observed on the night in question. Cleveland further testified that JG reported feeling as if she could "hardly breathe" as a result of appellant's choking her. As stated above, each of JG's injuries were documented by photographs shown to the jury during the trial. Cleveland then opined, based upon her experience in investigation of injuries suffered in sexual assault cases previously investigated, that appellant's hands, in the manner they were used on JG's throat, were capable of causing death or serious bodily injury.

JG testified about the injuries she received from appellant and demonstrated how appellant had choked her. JG's testimony was that she "couldn't hardly breathe" as a result of the choking. JG told the jury she thought appellant was going to kill her.

Appellant's chief complaint seems to be directed at the opinion testimony of Cleveland. Appellant points out that Cleveland admitted she did not investigate homicide cases, and had not personally investigated any case involving a choking

death. According to appellant's theory, this means that her opinion was not worthy of belief and actually amounted to no evidence. We disagree with appellant's characterization of Cleveland's opinion testimony. What the cross-examination of Cleveland accomplished was to give the jury more information to use in evaluating the credibility of Cleveland's opinion. The jury did this when it opted to find that a deadly weapon, to-wit: appellant's hands, had been used in the commission of the burglary. We will not disturb the jury's finding based upon the credibility and weight to be given the testimony that the jury heard. See Brooks, 323 S.W.3d at 899.

When we view the evidence in the light most favorable to the jury's answer to the special issue, as we must when analyzing the sufficiency of the evidence, we are left with the conclusion that the jury's answer was rational. Jackson, 443 U.S. at 319; Ross, 133 S.W.3d at. 620. As such, the evidence was sufficient to support the jury's answer beyond a reasonable doubt. Brooks, 323 S.W.3d at 917. Accordingly, appellant's issue is overruled.

### Conclusion

Having overruled each of appellant's issues, the judgment of the trial court is affirmed.

Mackey K. Hancock
Justice

Publish.